White, J.
The principle recognized in Coe v. The Knox County Bank et al., 10 Ohio St. 412, and in Coe v. Peacock, 14 Ohio St, 190, in the opinion of a majority of the court, is decisive of this case. The ground on which the injunction was denied in the case first named, was that it did not appear that the mortgaged property was insufficient to satisfy both the execution and the mortgage debt.
The facts in Coe v. Peacock were substantially like the facts in the present case; and it was held in that case, that as between an execution creditor levying upon part of the mortgaged property of an insolvent railroad company, and a mortgagee whose mortgage debt exceeded the value of the property covered by the mortgage, the whole equitable interest in the property was in the mortgagee, and that the creditor acquired no substantial interest by his levy. Consequently, it was further held, in that case, that though the mortgagee had, in violation of the terms of the mortgage, recovered in replevin the property levied on, yet the creditor was entitled only to nominal damages.
The right of the execution creditor to make the levy for *the purpose of obtaining a lien as to any interest of the mortgagor, subject to levy, is admitted, Ib. 190; Coe v. C., P. & I. R. Co., 10 Ohio St. 403.
But the operation of these railroad mortgages upon subsequently acquired property, both as against the company and its other creditors, having been settled by repeated decisions, an execution creditor has no right to disconnect, remove, and sell portions of the mortgaged property, when by so doing he would diminish the security of the mortgagee, which is admitted to be already inadequate. And that the mortgagee is entitled, in equity, to be protected against the assertion of such right by the execution creditor, is laid down in the opinion in Coe v. Peacock, page 191, where, in speaking of the rights of the mortgagee as against the execution creditor, Ranney, J., says: “ There is no doubt that, upon the facts stated in the record, that all the property mortgaged was largely insufficient to pay the debts incurred by it, and that the company was insolvent, he might have successfully invoked the interposition of a court of equity to prevent further proceedings upon the executions. •’
And in Coe v. The Piqua and Indiana Railroad Co., 10 Ohio St. 402, in speaking of liens by levy, it is said by G-holson, J.: “ When *596 those liens are sought to be enforced by a removal of the property,, he [the mortgagee] might justly complain if his security was thereby endangered.” ■
But the mortgages in this case contain an express reservation of “ so much of the income as might be necessary to pay for the running expenses, repairs,” etc. We do not question that the liability of the company for which these judgments were rendered ought to-be regarded as included in the necessary expenses, and to be paid as such; or, perhaps, even without such express reservation, they ought to be regarded as incidental liabilities incurred by the company in operating the road, and to be deducted from the earnings-before the net income covered by the mortgages could be properly ascertained. *
But in this view the remedy of the judgment creditor would be, in equity, to charge the earnings of the company as a fund, and to-subject so much thereof as might be ^necessary to the payment of the judgment; not to remove and sell, by execution, disconnected portions of the mortgaged property, thus stopping the operation of the road, and depriving the mortgagee of his security.
Nor do we intend to deny the right of the defendants, in equity, either by answer in the nature of a cross-petition, or by original petition, to have the interest of the mortgagor ascertained and subjected, in such mode as may be consistent with the rights of the prior incumbrancers, to the payment of their judgments.
We are not unaware of the harships and difficulties frequently experienced by certain classes of creditors (especially those whose-claims are so small as not to justify expensive litigation for collection) of insolvent railroad companies whose property is mortgaged for more than it is worth, but who are, notwithstanding their default on the mortgages, allowed by the mortgagees to continue in, the use and operation of their roads. These inconveniences result in part from the magnitude and character of the business, and the-comprehensive operation, now firmly established by repeated decisions, given to this description 'of mortgages. The difficulties referred to could in a great measure be obviated by appropriate legislation, which we should be glad to see provided.
Judgment of the district court reversed, and that of the common pleas affirmed.
Day, C. J., and Welch, J., concurred.
Scott and Brinkerhoee, JJ., dissented.